UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARTHA WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:21-cv-185-MTS |
| | ) | |
| KILOLO KIJAKAZI, *Acting Commissioner of the Social Security Administration*, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant, the Acting Commissioner of Social Security, denying the application of Martha Walker ("Plaintiff") for Disability Insurance Benefits ("DIB").[1] In September 2018, Plaintiff applied for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 (the "Act"). Plaintiff alleged disability due to heart attack with stents, stroke with extreme dizziness, mini strokes with anemia and brain lesions, diverticulitis and colitis, back surgery, neck surgery, cardiac spasms, high blood pressure, and asthma. (Tr. 194). In July 2020, following a hearing, an Administrative Law Judge ("ALJ") issued his decision finding that Plaintiff was not disabled as defined in the Act. (Tr. 10–21). For the following reasons, the Court affirms.

**I.   Evidence before the ALJ**

**A.  Overview of Relevant Facts and Medical History**

Although Plaintiff's medical records show several health impairments, the Court will discuss just those pertinent to its analysis in this Memorandum and Order. As pertinent here,

---

[1] Section 1383(c)(3) of the Act provides for judicial review of the SSA Commissioner's "final decision." After the ALJ concluded Plaintiff was not disabled under the Act, (Tr. 10–21), the Appeals Council denied Plaintiff's request for review, (Tr. 1–4); thus, the ALJ's decision stands as the Commissioner's final decision.

1

Plaintiff alleges disability, with an alleged onset date of October 28, 2017, due to a history of strokes and heart attacks and its effects of fatigue, dizziness, and difficulty handling stress.

Prior to her alleged onset date of disability, Plaintiff underwent angioplasty of the first major coronary artery in 1996 with stenting in 1998 and 2016. (Tr. 829–30). Plaintiff has a history of coronary stent placement and cerebral vascular accidents (strokes) with "no residual deficits." (Tr. 452). In February 2017, Plaintiff's cardiologist, Dr. Christopher Speidel, noted Plaintiff's chest pain symptoms were often precipitated by emotional stress. (Tr. 817–18). In May 2017, Plaintiff saw Dr. John McGarry for generalized weakness on her right side after allegedly experiencing nausea, chest pain, and loss of fine motor skills. (Tr. 312). Dr. McGarry diagnosed Plaintiff with orthostatic hypotension, dizziness, and giddiness and advised her to go to the emergency room ("ER"). (Tr. 314). There, Plaintiff experienced transient neurological events but exhibited normal sensation, reflexes, gait, and a neurological examination; aside from elevated blood pressure, her overall workup was negative. (Tr. 310, 309, 323–24, 458, 461, 465, 408).

In June 2017, Dr. Ashutosh Patel, Plaintiff's physician, did not place any limitations on her ability to work. (Tr. 1294). Electrodiagnostic testing performed showed mild median and ulnar nerve entrapment involving the sensory fibers. (Tr. 630). There were no signs of myopathy. In July 2017, Dr. Patel completed a form stating that Plaintiff did not have any cognitive deficits that would prevent her from returning to work. (Tr. 1293–94, 1835). In August 2017, Plaintiff reported to Dr. Patel that she was experiencing fatigue, weakness, increased dizziness, trouble concentrating, and that her job as a financial consultant was "very stressful." (Tr. 1127). On September 1, 2017, Dr. Patel released her for return to work. (Tr. 1291). Plaintiff stated that she felt better in September 2017. (Tr. 1123).

In October 2017, the month Plaintiff alleged disablement, she saw Dr. Tariq Alam for continued muscle weakness, fatigue, and intermittent blurred vision. (Tr. 622). Dr. Alam noted that Plaintiff's alleged fatigue and weakness were "stable" and comprehensive workups for neuromuscular disorders were negative. Plaintiff's neurological examination was normal, and she continued to demonstrate full muscle strength in all four extremities and a normal gait. (Tr. 625). That month, she also reported that she may change jobs because her work was too stressful but that her dizziness was improving. (Tr. 1119).

In January 2018, Plaintiff reported fatigue for "many months," and Dr. Bhaskara Gadi subsequently diagnosed Plaintiff with chronic anemia.[2] (Tr. 1015). In May 2018, Plaintiff saw Dr. Jeffrey Calvin for episodes of weakness, stating that the episodes had worsened over the previous two to five years. (Tr. 641–42). Plaintiff also reported episodes of dizziness and blurred vision that lasted up to a few hours, three times per week.[3] She reported periodic coronary vasospasms and episodes of generalized weakness triggered by physical activity, such as yardwork. She stated that her weakness episodes also resolved once she got a good night of sleep. Plaintiff's neurological examination was normal, and she continued to demonstrate a normal gait and full muscle strength in her upper and lower extremities. Plaintiff was diagnosed with episodic muscle weakness, ataxia, and vertigo and it was recommended that she follow up with an ear, nose, and throat specialist. (Tr. 644, 652, 674).

In November 2018, Plaintiff visited the ER for chest pain, but her workup was negative during a two-day hospitalization. (Tr. 752, 755). There, Dr. Rachel Brown diagnosed her with unspecified chest pain and near syncope based on her report that she felt like she might pass out.

---

[2] In September 2018, Plaintiff's diagnosis changed to normocytic anemia and neutropenia. (Tr. 1029).
[3] Though Plaintiff had been complaining of intermittent blurring of her vision, it was noted in October 2018 that her vision was correctable to 20/25 and 20/30. (Tr. 742). The notes state that her prescription was updated, and she was advised to return in one year. (Tr. *id.*).

3

(Tr. 757). It is noted that Plaintiff reported being under a lot of stress and had a history of coronary vasospasms. (Tr. 759). Dr. Patel diagnosed Plaintiff with chest pain, hypertension, coronary artery spasm, chronic pain, reflux disease, hyperlipidemia, and major depression. (Tr. 766). Dr. Azamuddin Khaja also diagnosed Plaintiff with coronary artery disease with possible Prinzmetal angina. (Tr. 771). Imaging of her chest was negative as well as her cardiac workup; Plaintiff's symptoms were attributed to hypotension triggered by her nitroglycerin. (Tr. 764, 771, 776, 781). Her hypertension, chronic pain, and gastroesophageal reflux disease ("GERD") were noted to be stable and well-controlled with medication. (Tr. 766).

In January 2019, Plaintiff's angina was stable, her lungs clear, and she denied any chest pain. (Tr. 1094, 1097–98). In February 2019, Plaintiff was noted to have normal range of motion in her spine. (Tr. 1897). In March 2019, Plaintiff denied any joint or muscle pains. (Tr. 1195). Her physical and mental status examinations were unremarkable. Her lungs were clear, her heart rhythm was regular, and her gait was normal. In April 2019, she reported her "legs hurt all the time and [are] worse when sitting." (Tr. 1236). Dr. Khaja diagnosed Plaintiff with atherosclerosis of native arteries of extremities with intermittent claudication in her bilateral legs. (Tr. 1237). That month, Plaintiff denied dizziness. (Tr. 1892).

In July 2019, Plaintiff visited the ER complaining of chest pain, but her cardiac workup remained negative. (Tr. 1379, 1384–85). Dr. Souheil Khoukaz noted that Plaintiff's New York Heart Association ("NYHA") classification was "II," indicating minimal functional restrictions.[4] (Tr. 1542). Plaintiff's loop recorder had not shown signs of arrhythmia, and she had not had any transient ischemic attacks ("TIA") since 2017. (Tr. 1549). In addition, her hypertension was noted to be well-controlled. (Tr. *Id.*).

---

[4] This classification states that this is a cardiac patient with only a "slight" limitation of physical activity, but with no symptoms at rest.

In the Fall of 2019, Plaintiff reported malaise, fatigue, and dizziness. (Tr. 1550–51, 1556). At other times during this period, she denied dizziness. (Tr. 1325, 1881). Plaintiff's dizziness appeared to be related to low blood pressure. (Tr. *Id.*). In October 2019, Plaintiff reported generally feeling "fine" and denied any chest pain, dizziness, headaches, shortness of breath, weakness, numbness, or difficulty urinating. (Tr. 1324–25). Plaintiff demonstrated full muscle strength and tone, ambulated normally, and exhibited a normal mental status examination.

In December 2019, Plaintiff visited the ER exhibiting chest pain, left sided facial droop, numbness, weakness, and speech difficulty. (Tr. 1441, 1443–44). Plaintiff was diagnosed with a minor cerebral vascular accident (stroke) with a stroke score of "3." (Tr. 1451, 1488, 1495). Other workups were negative, including a mental status examination. (Tr. 1449, 1460). Plaintiff's symptoms improved on their own, and Plaintiff was discharged in stable condition on day two. (Tr. 1453, 1482). Follow-up notes stated that imaging of her brain showed no recent infarctions. (Tr. 1807). Her coordination and gait remained normal. (Tr. 1813).

In January 2020, Plaintiff did not report fatigue, muscle weakness, or word finding difficulty to Dr. Gadi. (Tr. 1848). Plaintiff exhibited a normal gait and had normal mental status examinations from January to May 2020. (Tr. 1848, 1918, 1931–32, 1943–44). In May 2020, Plaintiff denied light headedness, made no mention of dizziness, and reported she was "feeling fine." (Tr. 1931, 1943). In June 2020, Plaintiff visited the ER with another episode of facial droop, but her workup was essentially negative, and her mental status examination was normal. (Tr. 1958, 1962, 1965, 1969, 1974). She was discharged the following day in "improving" condition. (Tr. 1984).

5

### B. Medical Opinion Evidence

In May 2019, Dr. Steven Akeson, a State agency consultative psychologist, evaluated Plaintiff's medical history. (Tr. 71). Dr. Akeson found that Plaintiff had only work-related mental function limitations in just one area—ability to maintain concentration, persistence, and pace—and found that limitation to be "mild" in severity. Dr. Akeson concluded that Plaintiff did not have any severe mental impairments.

In June 2019, Dr. Michael O'Day, a State agency consultive physician, evaluated Plaintiff's medical history. (Tr. 73–78). Dr. O'Day opined that Plaintiff is capable of performing "light work" but should avoid environmental hazards and only occasionally climb. (Tr. 73).

### C. Hearing Testimony

At the May 2020 hearing, Plaintiff testified that she had to take a leave from work after she had a heart attack and experienced weakness and facial drooping. (Tr. 34). She alleged that she could not work, in part, due to "a lot of dizziness." (Tr. 35). Furthermore, Plaintiff testified that she took meclizine for the dizziness up to three times per day and that it made her "sleepy." (Tr. 35–36). When describing the effect of the meclizine on her work, Plaintiff stated that it made her "extremely tired and not on point." Plaintiff testified that, on most days, she laid down a couple times due to "weak spells" and dizziness. (Tr. 40, 47). She claimed that she was frequently dizzy to the point where she would stagger, and that when she was drowsy and dizzy, she could not handle paperwork for clients or use a computer. (Tr. 35–36). Plaintiff alleged that she had only driven a car five or six times over the previous two years from the hearing date due to her "spells," and that she could not vacuum or perform yard work. (Tr. 42). However, she was able to dust, clean dishes, and cook. Due to her symptoms of fatigue and dizziness, Plaintiff also stated that

6

she no longer served as a board member for the Chamber of Commerce and was not able to spend much time with her grandchildren. (Tr. 43).

## II. Standard of Review and Legal Framework

To be eligible for disability benefits, Plaintiff must prove that she is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). A claimant will be found to have a disability "only if [her] physical or mental impairment or impairments are of such severity that he is not only unable to do [her] previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff v. Barnhart*,

7

421 F.3d 785, 793 (8th Cir. 2005).  At Step 4, the ALJ must determine whether the claimant can return to her past relevant work by comparing the RFC with the physical demands of the claimant's past relevant work.  20 C.F.R. § 404.1520(f).  If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled.  *Id.*

The Court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole.  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it.  *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, a court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision).  The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence

8

in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp." *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

### III. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity ("SGA") during the alleged period of disability. (Tr. 12). At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status-post cervical and lumbar fusions, degenerative joint disease, status-post total knee arthroplasty (joint replacement), coronary artery disease, and status-post multiple transient ischemic attacks. (Tr. 13). At Step 3, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment. (Tr. 13–14). As such, the ALJ found Plaintiff had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), with some exertional and environmental limitations. (Tr. 14). Plaintiff should never climb a ladder, rope, or scaffold but can occasionally stoop, kneel, crouch, and crawl. Furthermore, Plaintiff must avoid vibration and hazards, such as working at unprotected heights and proximity to unprotected dangerous machinery. At Step 4, the ALJ found Plaintiff could perform her past relevant work as a financial advisor/broker. (Tr. 20). Consequently, the ALJ concluded Plaintiff is not disabled under the Act. (Tr. 21).

### IV. Discussion

The specific issues in this case are: (1) whether substantial evidence supports the ALJ's RFC finding based on the ALJ's consideration of Plaintiff's subjective complaints of symptoms and (2) whether the ALJ properly found that Plaintiff could perform her past work as a financial advisor.

9

1. **<u>The ALJ's RFC Finding Is Supported By Substantial Evidence And The ALJ Properly Considered Plaintiff's Symptoms</u>**

Plaintiff argues that the ALJ's RFC finding did not account for the effects of her fatigue, dizziness, and difficulty in handling stress in the RFC. *See* Doc. [11] at 3. A plain reading of the ALJ's decision, however, shows that the ALJ *did* consider each of these three symptoms, (Tr. 15-20), but instead, concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence in the record. (Tr. 16).

The ALJ must consider a claimant's subjective complaints of symptoms when determining a claimant's RFC. *See Goff*, 421 F.3d at 790. The ALJ cannot discount subjective complaints solely because they are unsupported by objective medical evidence. *Halverson v. Astrue*, 600 F.3d 922, 931–32 (8th Cir. 2010) (citing *Mouser*, 545 F.3d at 638). However, the ALJ may discount complaints if they are inconsistent with the evidence as a whole. *Chaney v. Colvin*, 812 F.3d 672, 677–78 (8th Cir. 2016); *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence."). When analyzing a claimant's credibility, the ALJ considers various factors. *See* 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (explaining the factors are (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) any functional restrictions); *see also Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) ("[L]ack of objective medical evidence is a factor an ALJ may consider."). The "credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001); *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001) ("ALJ is in the best position to determine the credibility."). The Court defers to the ALJ's credibility determination if it is supported by good

reasons and substantial evidence. *Bryant v. Colvin*, 861 F.3d 779, 782–83 (8th Cir. 2017). After engaging in a proper credibility analysis, the ALJ then limits his "RFC determination to only the impairments and limitations he found credible based on his evaluation of the entire record." *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003); *see also Goff*, 421 F.3d at 793 (explaining the RFC is based on all "credible evidence").

As applied here, the ALJ found Plaintiff's complaints of fatigue, dizziness, and difficulty in handling stress not as limiting as Plaintiff suggested, such that the ALJ did not include specific limitations from those symptoms in the RFC. The ALJ properly made this determination based on several factors.

First, the ALJ considered the lack of objective medical evidence, including imaging and physical examinations, to corroborate the severity of Plaintiff's allegedly disabling symptoms. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (explaining the lack of objective medical evidence to support a claimant's complaints is relevant in assessing credibility); 20 C.F.R. § 404.1529(c)(2) (considering objective medical evidence in evaluating intensity and persistence of symptoms). Despite Plaintiff's complaints to several physicians of ongoing episodes of fatigue, muscle weakness, dizziness,[5] and blurred vision,[6] (Tr. 35, 622, 641, 1008, 1324, 1545, 1550–51, 1556, 1568, 1827, 1881), the ALJ noted several of Plaintiff's "normal" examinations from 2017 to 2020 showing normal muscle strength, range of motion, and gait as well as normal neurological

---

[5] The ALJ also properly considered inconsistencies between Plaintiff's allegations and the record relating to dizziness. *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017). Despite Plaintiff's allegations of disabling dizziness, the ALJ noted that the record showed numerous instances where Plaintiff expressly denied feeling dizzy or omitted mentioning any dizziness, which undermines her allegations that it was severe enough to be disabling. (Tr. 622, 625, 1094, 1119, 1325, 1881, 1931, 1943); *see Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) ("Inconsistent or contradictory statements made to physicians are a proper basis to discount Plaintiff's credibility."). The ALJ also considered Plaintiff's normal neurological examinations despite complaints of dizziness three times a week. (Tr. 17, 641–42).

[6] As for Plaintiff's complaints of blurred vision, the ALJ found that there was nothing convincing in the record to suggest that she has any significant visual difficulties. (Tr. 17). It was noted in October 2018 that Plaintiff's vision was correctable to 20/25 and 20/30. (Tr. 742). According to the notes, her prescription was updated, and she was advised to return in one year. (Tr. *Id.*).

11

examinations, including no signs of myopathy. The ALJ also noted negative results on bone scans, normal results from stress testing, and negative comprehensive workups for neuromuscular disorders and fatigue, despite being diagnosed with anemia and neutropenia. (Tr. 18, 622). The ALJ may discount subjective complaints that are "undermined" by the medical evidence. *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019); *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (holding the ALJ may find a claimant's subjective pain complaints not credible considering objective medical evidence to the contrary).

Likewise, the ALJ found objective medical evidence failed to support Plaintiff's alleged mental limitations from stress and concentration difficulties. The ALJ noted Plaintiff's numerous "unremarkable" neurologic and psychological examinations, with no mention of concentration problems or significant limitations related to stress.[7] The ALJ also noted normal results from stress testing. The ALJ properly considered such evidence. *Goff*, 421 F.3d at 792 (holding proper the ALJ's consideration of unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints); 20 C.F.R. § 404.1529(a) (requiring "medical signs and laboratory findings" that corroborate a claimant's allegations in order to establish the presence of disabling symptoms).

Specifically, as to Plaintiff's cardiac condition, the ALJ found that objective medical evidence did not support a finding that her condition rendered her disabled. For example, the ALJ noted several of Plaintiff's visits to the emergency room for chest pain that rendered negative cardiac workups as well as negative imaging of her chest. Despite surgery in the 90s and subsequent stenting, the ALJ found Plaintiff's overall cardiac condition appeared to be "generally stable over the years." (Tr. 17).

---

[7] Importantly, the ALJ noted that the only support Plaintiff provided for her argument about stress and lack of concentration appears to be her own complaints.

Second, the ALJ considered medical opinions assessing Plaintiff's physical and mental working capability, and Plaintiff does not contest the validity of those opinions. 20 C.F.R. § 404.1529(b)–(c) (evaluating symptoms with medical opinions). Two state agency consultants opined that Plaintiff was not disabled and the ALJ properly relied on these medical opinions. *See Masterson v. Barnhart*, 363 F.3d 731, 737–39 (8th Cir. 2004) (holding the ALJ properly relied on the assessments of non-examining physicians in determining the claimant's physical RFC); *Kamann v. Colvin*, 721 F3d 945, 951 (8th Cir. 2013) (finding a state agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments); 20 C.F.R. § 404.1513a (explaining evidence from Federal or State agency medical or psychological consultants must be considered because those doctors are "highly qualified and experts in Social Security disability evaluation"). Dr. Akeson reviewed Plaintiff's record and found that Plaintiff had only mild limitation in concentration, persistence, or pace, and no other limitations. (Tr. 71). Dr. O'Day found that Plaintiff could perform "light work," (Tr. 73), with some limitations, (Tr. 74–75), those of which are incorporated into the RFC.

Plaintiff did not submit any medical opinions that provide a contrary conclusion of disablement. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001) (explaining that a claimant bears the burden of showing a severe impairment significantly limits her ability to perform basic work activities). To the contrary, the record shows medical notes and opinions from Plaintiff's *own* treating physicians that do *not* support disablement. Notably, Plaintiff's physician, Dr. Patel released her for return to work as a financial advisor right *before* her alleged onset date of disability, in September 2017. (Tr. 18, 1291). Dr. Patel completed a form stating that Plaintiff did not have any cognitive deficits that would prevent her from returning to work. (Tr. 18, 1294, 1835). Despite care from several physicians and a long and extensive medical history, of which

13

over 2,400 pages of medical evidence were submitted to the ALJ, no provider reported disabling impairments nor imposed greater limitations on Plaintiff than the ALJ. *Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000) (discrediting Plaintiff's subjective complaints based on absence of physician-ordered limitations and the lack of objective medical evidence is proper).

Third, the ALJ discussed precipitating and aggravating factors. *See* 20 C.F.R. § 404.1529; *Polaski*, 739 F.2d at 1322. Plaintiff reported that her periodic coronary vasospasms and episodes of generalized weakness were triggered by physical activity and stress, including emotional stress. (Tr. 242, 248, 641, 818). Plaintiff also reported that her weakness episodes alleviated once she got a good night of sleep. (Tr. 641). The ALJ also noted that many of Plaintiff's conditions (e.g.: hypertension, chronic pain, and GERD) were stable and well controlled with medication. (Tr. 17, 766); *see Guilliams*, 393 F.3d at 802 ("Evidence of effective medication resulting in relief, for example, may diminish the credibility of a claimant's complaints.") (citing *Rose v. Apfel*, 181 F.3d 943, 944 (8th Cir. 1999)).

Fourth, the ALJ considered that Plaintiff also worked for many years with her cardiac condition, (Tr. 17), and the lack of objective medical evidence that showed any deterioration in her condition. *See Goff*, 421 F.3d at 792–93. Finally, the ALJ considered Plaintiff's daily activities and found that such "level of independent function [was] inconsistent with a finding of disability." (Tr. 18); *Andrews*, 791 F.3d at 929 (discounting claimant's credibility based on daily activities and appearance at the hearing); *Blakeman v. Astrue*, 509 F.3d 878, 882 (8th Cir. 2007) ("Many workers suffer from fatigue but are able to work, just as many people suffer from chronic pain that is not disabling.").

Defendant argues that Plaintiff's overall RFC argument does little more than rehash the evidence that the ALJ already considered. *See* Doc. [16] at 8 (citing Doc. [11] at 3–6). The Court

14

agrees; it is the Court's responsibility to determine whether substantial evidence supports *the ALJ's decision*, not to re-evaluate the evidence. *See Cox*, 495 F.3d at 617 ("It is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo.") (internal citations omitted). This is especially true in a case such as this one, where Plaintiff relies so heavily on subjective allegations to support her disability claim. *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (deferring to the ALJ's credibility determination where the objective medical evidence did not support the claimant's testimony as to the depth and severity of his impairments). Contrary to Plaintiff's argument, remand is not justified by the mere fact that Plaintiff pointed to "some evidence in the record [that] could lend support to a more restrictive RFC finding." *See Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019). While Plaintiff disagrees with the ALJ's analysis of how her symptoms limited her ability to work, the question before the Court is whether substantial evidence supports the ALJ's decision, not whether substantial evidence could lead to a different outcome. *McNamara*, 590 F.3d at 610. For the reasons discussed above, the Court finds that the ALJ's credibility analysis and RFC is supported by substantial evidence.

2. ***The ALJ's Work Finding Is Supported By Substantial Evidence***

The Court considers whether the ALJ's determination that Plaintiff can return to her past relevant work, and is therefore not disabled, is supported by substantial evidence. During a hearing, the ALJ asked the vocational expert ("VE") a hypothetical whether an individual with Plaintiff's RFC could perform work as a financial advisor/broker. (Tr. 58–59). Based on the ALJ's hypothetical and RFC assessment, the VE testified that Plaintiff could perform her past relevant work as a financial advisor/broker. (Tr. *id.*). Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past work. (Tr. 21); *Wagner*, 499 F.3d at 853–54

15

(explaining the Eighth Circuit considers VE testimony at Step 4); *Blackburn v. Colvin*, 761 F.3d 853, 870 (8th Cir. 2014) (upholding Commissioner's decision of non-disablement based on evidence that VE stated the claimant could return to past work); 20 C.F.R. § 404.1560(b)(2) ("We may use the services of vocational experts or vocational specialists . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.").

Plaintiff argues that she would be precluded from her past work had the ALJ asked the VE a hypothetical limiting Plaintiff to simple/repetitive work or taking unscheduled breaks during a workday. The ALJ found "no persuasive support in the record for a finding of any additional limitations" in the RFC finding such as the ones suggested by the claimant's representative. (Tr. 21). Plaintiff "fails to recognize that the ALJ's determination regarding her RFC was influenced by [her] determination that [Plaintiff's] allegations were not credible." *Wildman*, 596 F.3d at 969. The ALJ incorporated all of Plaintiff's impairments that she found credible into the RFC and then similarly limited the hypothetical as such. A "hypothetical is sufficient if it includes the impairments supported by substantial evidence and found credible by the ALJ." *Blackburn*, 761 F.3d at 860–61; *Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014) ("a hypothetical need only include impairments that the ALJ finds credible"). Because the ALJ properly evaluated the record, formulated Plaintiff's RFC, and relied upon testimony from a vocational expert, the Court finds that the ALJ's Step 4 finding is supported by substantial evidence.

## Conclusion

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 2nd day of August 2022

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE